IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DENNIS L. DUNN,

       **Plaintiff,**

v.                                                                    Civil Action No. 3:18cv699

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS, *et al.*,

       **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendants United States Department of Veterans Affairs ("DVA") and United States' Motion to Dismiss *pro se* Plaintiff Dennis L. Dunn's Second Amended Complaint ("SAC"),[1] brought pursuant to Federal Rules of Civil Procedure 12(b)(1)[2] and 12(b)(6).[3] (ECF No. 19.) Dunn failed to reply to the Motion to Dismiss, and the time to do so has expired. This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C.

---

[1] DVA filed, along with its Motion to Dismiss, a notice consistent with the requirements set forth in *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Civil Rule 7(K). (ECF No. 21.)

[2] Rule 12(b)(1) allows a party to seek dismissal for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).

[3] Rule 12(b)(6) allows a party to seek dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

§ 1346.[4] For the reasons that follow, the Court will grant the Motion to Dismiss the Second Amended Complaint.

## I. Factual and Procedural Background

This medical malpractice claim, filed pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, arises out of an allegedly botched prostate surgery performed on Dunn at the McGuire Veterans Medical Center (the "McGuire VA Center") in Richmond, Virginia on June 21, 2012. (SAC 1, ECF No. 18.) Because this matter comes before the Court on Dunn's Second Amended Complaint, the Court will discuss Dunn's previous complaints and the Court's dismissal without prejudice of Dunn's First Amended Complaint before addressing Dunn's factual allegations in the Second Amended Complaint.

### A.    Procedural History and Dunn's Previous Complaints

On September 7, 2017, Dunn filed an administrative tort claim with DVA alleging that he sustained injuries during a prostate surgery performed at the McGuire VA Center on June 21, 2012. (SAC 2.) On February 12, 2018, DVA sent Dunn a letter notifying him that his claim was denied (the "Denial Letter").[5] (Mem. Supp. Mot. Dismiss SAC Ex. 2 "Denial Letter," ECF

---

[4] 28 U.S.C. § 1346, reads, in relevant part:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.

28 U.S.C. § 1346(b)(1).

[5] The Denial Letter, sent via certified mail, informed Dunn of his subsequent rights, including that he was entitled to "seek judicial relief in a Federal district court," and cautioned him that he "must initiate the suit within six months of the mailing of this notice." (Denial Letter 1–2, ECF No. 20-2.)

No. 20-2.)  Eight months later, on October 12, 2018, Dunn initiated this case *pro se* by filing a

Motion to Proceed *In Forma Pauperis*, (ECF No. 1), which the Court granted, (ECF No. 2).  On

January 3, 2019, Dunn filed his Original Complaint.  (ECF No. 5.)  The Court ordered Dunn to

file an Amended Complaint to both provide in "simple and straightforward terms why [he] thinks

that he is entitled to relief" and establish "why [this] Court had jurisdiction over his case."  (Jan.

24, 2019 Order 1–2, ECF No. 4.)  Dunn attempted to remedy these deficiencies by filing the First

Amended Complaint, naming only the DVA as Defendant.  (ECF No. 6.)

On June 28, 2019, the DVA filed a Motion to Dismiss Dunn's First Amended Complaint

(the "First Motion to Dismiss"), (ECF No. 11), which the Court granted, (Dec. 16, 2019, Mem.

Op. & Order, ECF Nos. 16–17).  The Court determined that:  (1) Dunn had failed to state a claim

under Rule 12(b)(6) by "not timely filing [his] case as required by 28 U.S.C. § 2401(b)[6]";

(2) this Court lacked jurisdiction under Rule 12(b)(1) because Dunn "did not obtain the expert

certification of merit required by the [Virginia Medical Malpractice Act]";[7] and, (3) this Court

lacked jurisdiction over DVA under Rule 12(b)(1) because sovereign immunity "shield[ed] DVA

---

[6] 28 U.S.C. § 2401(b) reads, in relevant part:

> [a] tort claim against the United States shall be forever barred unless it is presented in
> writing to the appropriate Federal agency within two years after such claim accrues or
> unless action is begun within six months after the date of mailing, by certified or
> registered mail, of notice of final denial of the claim by the agency to which it was
> presented.

28 U.S.C. § 2401(b).

[7] Dunn included in his response to the First Motion to Dismiss a report from Craig N.
Bash, M.D., dated July 14, 2019, which averred that the surgery caused Dunn's symptoms,
noting that his "records do not support another alternative explanation (etiology)."  (Resp. Mot.
Dismiss Ex. 2 "Dr. Bash Report," 2, ECF No. 14-2.)  DVA asserted that the report was
"untimely" and failed to identify that the defendant had "breached the standard of care or that the
alleged breach proximately caused the . . . injuries" as required by the Virginia Medical
Malpractice Act ("VMMA").  (Reply First Mot. Dismiss 2–3, ECF No. 15.)

from suit." (Dec. 16, 2019 Mem. Op. 5, ECF No. 16.)  Given Dunn's *pro se* status, this Court

dismissed his case without prejudice, and granted Dunn leave to file a Second Amended

Complaint by no later than January 10, 2020.  (*Id.* 17; *see* Dec. 16, 2019 Order.)

On January 9, 2020, Dunn timely filed his Second Amended Complaint, naming both

DVA and the United States as defendants.  (SAC 1.)  In response to the Second Amended

Complaint, DVA filed a Motion to Dismiss on the grounds that the Second Amended Complaint

did "not remedy the deficiencies identified in Defendant's motion to dismiss and the Court's

Memorandum Opinion."  (Mem. Supp. Mot. Dismiss SAC 3, ECF No. 20; Mot. Dismiss SAC,

ECF No. 19.)  Specifically, Defendants submit that Dunn:  (1) did not identify "any justification

that would excuse his failure to file this action within six months of the denial of his

administrative . . . claim;" and, (2) did not remedy his failure to comply with the VMMA's

mandatory expert certification requirements.  (Mem. Supp. Mot. Dismiss SAC 3.)

B.    **Factual Allegations in the Second Amended Complaint**[8]

In his Second Amended Complaint, Dunn again brings a medical malpractice claim

against DVA, alongside the United States, for injuries sustained during a purportedly botched

surgery at the McGuire VA Center on June 21, 2012.  (SAC 1.)  Dunn claims that he has an

"illness [] permanent in nature" stemming from the surgery.  (SAC 2, ECF No. 18.)  After the

biopsy, Dunn began to have "urinary retention/leakage [problems]" that force him to "use

[D]epends several times a day."  (*Id.* 1.)  He has also experienced "persistent pain, ED[,] and

---

[8] For the purpose of the Rule 12(b)(6) Motion to Dismiss, the Court will accept the well-pleaded factual allegations in Dunn's Amended Complaint as true, and draw all reasonable inferences in favor of Dunn. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) ("a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'") (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

recurrent infections" since the procedure was performed. (*Id.* 1–2.) Dunn's "injury has had a profound [effect] on [his] daily activities and has caused [his] Major Depressive Disorder to worsen." (*Id.* 2.)

Dunn alleges that doctors at the McGuire VA Center "concealed the injury for 5 years" by telling him that his "symptoms were due to an enlarge[d] prostate." (*Id.*) In 2017, Dunn discovered the true cause of his symptoms after viewing his medical records, when he saw "that during the biopsy [his] prostate was damaged during the procedure in 2012." (*Id.*) In his Second Amended Complaint, as in his First Amended Complaint, Dunn cites an "expert opinion" submitted by a Dr. Craig N. Bash, which finds that the injuries "were not expected or foreseeable outcomes of the biopsy," "state[s] that the illness is . . . not expected to improve with time," and reports that "the surgery caused [Dunn's] symptoms." (*Id.*)

Dunn requests the Court apply equitable tolling to his failure to timely file his administrative tort claim within the relevant six month period, from February 12, 2018 to August 12, 2018. (*Id.* 3.) He states that his case qualifies for equitable tolling on the grounds that "during the . . . delay [he] was dealing with [his] wife['s] circumstances," after she had "suffered a major stroke in 2015 and . . . spent the last 90 days of 2019 and 2020 at MCV and Vibra Hospital . . . for another major stroke." (*Id.*)

## II.  Standard of Review

### A.    *Pro Se* Pleadings

Because Dunn proceeds *pro se*, the Court liberally construes his filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citations omitted). District courts

5

have a duty to construe *pro se* pleadings liberally. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999). A *pro se* plaintiff must nevertheless allege facts sufficient to state a cause of action. *Id.* (citation omitted). The Court cannot act as a *pro se* litigant's "advocate and develop, *sua sponte*, statutory and constitutional claims that the [litigant] failed to clearly raise on the face of [the] complaint." *Newkirk v. Cir. Court of Hampton*, No. 3:14cv372, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014).

## III. Analysis

The Court will grant the United States' Motion to Dismiss Dunn's Second Amended Complaint.[9] The Second Motion to Dismiss asserts two independent grounds for dismissal: (1) Dunn does not state a claim under Rule 12(b)(6) because he did not timely file his suit within six months of the denial of his FTCA administrative tort claim and Dunn has failed to establish that equitable tolling should apply; and, (2) that this Court lacks jurisdiction over Dunn's claim under Rule 12(b)(1) because he failed to comply with the VMMA. (Mem. Supp. Mot. Dismiss SAC 3.) The Court will grant the Motion to Dismiss on both grounds.

### A. The Court Will Dismiss the Second Amended Complaint Because Dunn Did Not Timely File His Claim and Does Not Show That Equitable Tolling Should Apply

In his Second Amended Complaint, Dunn does not remedy the deficiencies in his First Amended Complaint by providing the Court with an adequate explanation that would necessitate applying equitable tolling. Because Dunn does not qualify for equitable tolling, the Court must dismiss his Second Amended Complaint for failure to state a claim.

---

[9] The Court will also dismiss DVA as a Defendant in this case on grounds of sovereign immunity, as this Court's First Memorandum Opinion established that Dunn "improperly named DVA" as a party to this action. (Dec. 16, 2019 Mem. Op. 16.)

### 1.  Standard of Review: Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555.  Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193 (citation omitted).  The Court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 676-79; *see also Kensington*, 684 F.3d at 467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor

of the plaintiff'" (quoting *Kolon Indus.*, 637 F.3d at 440)). This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

"Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (quoting *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011)).

## 2.   Legal Standard: Statute of Limitations

Statutes of limitations "are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348–49 (1944). To do so, statutes of limitations provide strict filing deadlines that parties must meet. *See United States v. Kubrick*, 444 U.S. 111, 117 (1979). Congress formulates this balance to afford plaintiffs "a reasonable time to present their claims" while also "protect[ing] defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence." *Id.* at 117.

The FTCA imposes two statutes of limitations:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or *unless action is begun within six months after the date of mailing . . . of notice of final denial of the claim by the agency to which it was presented.*

28 U.S.C. § 2401(b) (emphasis added). A claimant "must comply with both time requirements," *Shelton v. U.S. Post Office*, No. 3:08cv399, 2008 WL 4628466, at *2 (E.D. Va. Oct. 17, 2008),

or the claim stands "forever barred." 28 U.S.C. § 2401(b).  As to filing in district court after

denial of an administrative claim, "if the [p]laintiff's claim is not timely filed within six months

after the agency decision pursuant to the FTCA, the claim must be dismissed." *Kinson v. United

States*, 322 F. Supp. 2d 684, 686 (E.D. Va. 2004).

However, district courts may invoke equitable tolling if enforcement of the statute of

limitations would result in "gross injustice."[10] *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir.

2000). "[E]quitable tolling pauses the running of, or 'tolls,'" the beginning of the statute of

limitations period which, in practical effect, provides litigants more time to file suit. *Lozano v.

Montoya Alvarez*, 572 U.S. 1, 10 (2014).  Courts in the United States Court of Appeals for the

Fourth Circuit engage in "a case-by-case examination to determine if an equitable tolling of the

filing period is appropriate." *Nguyen v. Inova Alexandria Hosp.*, No. 98cv2215, 1999 WL

556446, at *3 (4th Cir. July 30, 1999).  The doctrine of equitable tolling is to be applied

"sparingly." *Irwin v. Dep't of Veteran's Affairs*, 498 U.S. 89, 96 (1990).  "Equitable tolling has

long been considered an extraordinary remedy in this circuit, and litigants face a considerable

burden to demonstrate that it applies." *Hazlegrove v. Colonial Pipeline Co.*, No. 3:18cv284,

2018 WL 6683030, at *4 (E.D. Va. Dec. 19, 2018) (citing *CVLR Performance Horses, Inc. v.

Wynne*, 792 F.3d 469, 476 (4th Cir. 2015)).[11]

---

[10] Although the FTCA provides that untimely filing of either the administrative claim or the subsequent Federal district court action "forever bar[s]" the claim, § 2401(b), this language does not preclude equitable tolling and "courts may toll both of the FTCA's limitations periods." *United States v. Wong*, 135 S. Ct 1625, 1629 (2015).

[11] Equitable tolling is generally "'reserved for those rare instances where—due to circumstances external to a party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Lake v. Capital One Bank, N.A.*, No. 1:11cv1342, 2012 WL 12973539, at *2 (E.D. Va. June 28, 2012) (quoting *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc)).

Thus, in order to state a claim under Rule 12(b)(6) and not fall victim to the FTCA's

statute of limitations, a plaintiff must satisfy "the Supreme Court's two-step test for determining

whether a plaintiff is entitled to equitable tolling."[12] *Edmonson v. Eagle Nat'l Bank*, 922 F.3d

535, 548 (4th Cir. 2019) (emphasis omitted) (citing *Menominee Indian Tribe v. United States*,

136 S. Ct. 750, 755 (2016)).  Under that test, a plaintiff must show:  "(1) that he [or she] has been

pursuing his rights diligently, and, (2) that some extraordinary circumstance stood in [the] way

and prevented timely filing." *Id.* (citation omitted); *see also Raplee v. United States*, 842 F.3d

328, 333 (4th Cir. 2016) (applying the two-step test to an FTCA medical malpractice claim).

The Supreme Court has cautioned against the expanded use of the equitable tolling doctrine,

stating that "[i]n the long run, experience teaches that strict adherence to the procedural

requirements specified by the legislature is the best guarantee of evenhanded administration of

the law." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (internal citation and

quotation omitted).[13]

---

[12] The Fourth Circuit has recently clarified which tests apply to at least three types of tolling:  equitable tolling, fraudulent concealment of a cause of action, and equitable estoppel. *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 548–49 (4th Cir. 2019).  Two bases for tolling—fraudulent concealment and equitable estoppel—allow tolling based on fraudulent, wrongful, or intentional misconduct outside the plaintiff's control. *Id.* at 549.  A court evaluates such tolling provisions under a three part test requiring a plaintiff to "demonstrate: (1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Id.* at 548 (quoting *Supermarket of Marlinton v. Meadow Gold Dairies*, 71 F.3d 119, 122 (4th Cir. 1995)).
In contrast, equitable tolling "focuses on whether there was excusable delay by the plaintiff," *id.* at 549 (quoting *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002), and "does not assume a wrongful—or any—effort by the defendant to prevent the plaintiff from suing," *id.* (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450–51 (7th Cir. 1990)).  A court assessing equitable tolling must apply the two part test articulated above.

[13] Examples of "extraordinary circumstances" include a plaintiff's timely filing of a complaint in the wrong court, *Burnett v. N.Y. Central R.R. Co.*, 380 U.S. 454 (1965), or a plaintiff allowing the filing period to lapse on the basis of an adversary's misrepresentation, *Glus*

3.      **Because Dunn Did Not Timely File His Claim and Does Not Qualify for Equitable Tolling, the Court Will Grant the Motion to Dismiss**

The statute of limitations precludes Dunn's claim. First, as addressed in its December 16, 2019 Memorandum Opinion, Dunn failed to timely file his suit in accordance with the FTCA. *Kinson*, 322 F. Supp. 2d at 686. Second, Dunn's explanation for his failure to timely file does not rise to the level of "extraordinary circumstances" necessary to justify equitable tolling in the Fourth Circuit. *Edmonson*, 922 F.3d at 544.

First, this Court has already determined that Dunn failed to file this case within the FTCA-mandated six month period, pursuant to 28 U.S.C. § 2401(b). (*See* Dec. 16, 2019 Mem. Op. 9.) On February 12, 2018, DVA mailed the Denial Letter to Dunn, establishing the start date for the statute of limitations.[14] (Denial Letter 2.) While the letter "notified . . . [him] that he had six months to file suit in district court," Dunn did not file his Motion for Leave to Proceed *In Forma Pauperis* until eight months the denial of his administrative claim—two months past the

---

*v. Brooklyn E. Dist. Terminal*, 359 U.S. 231 (1959). However, a claimant who failed to "act diligently" in pursuing a claim cannot then invoke the equitable tolling doctrine. *See Baldwin Cty. Welcome Ctr.*, 466 U.S. at 151.

[14] In most cases, the Court is permitted only to consider the "complaint in its entirety, as well as documents attached or incorporated into the complaint[,]" when looking at a motion to dismiss, to avoid "convert[ing] the motion into one for summary judgment." *Kolon Indus*, 637 F.3d at 448. However, the Fourth Circuit has "held that when a defendant attaches a document to its motion to dismiss, a 'court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (alternation in original) (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). The Denial Letter is integral to Dunn's complaint as it establishes that his administrative claim was denied and subsequently sets the applicable tolling period. Dunn acknowledges receipt of the Denial Letter (SAC 2), and does not "challenge its authenticity." *Am. Chiropractic*, 367 F.3d at 234. Because the letter was attached to the Motion to Dismiss and does not risk prejudicing Dunn due to lack of notice, the Court may consider the Denial Letter in this case. *See id.*

statutory deadline. (Dec. 16, 2019 Mem. Op. 9); (*see* Motion for Leave to Proceed *In Forma Pauperis*, ECF No. 1.)

Second, Dunn does not demonstrate that equitable tolling should apply because within the relevant timeframe, he "pursu[ed] his rights diligently, and . . . that some extraordinary circumstance stood in his way and prevented timely filing." *Edmonson*, 922 F.3d at 548. As this Court noted in its December 16, 2019 opinion, the bar for equitable tolling is high, and is only available to plaintiffs "in those rare instances where . . . due to circumstances external to the party's own conduct . . . gross injustice would result." *Id.* at 549 (internal citation omitted); (*see* Dec. 16, 2019 Mem. Op. 8.) Dunn asserts that his case clears this bar because he was "dealing with [his] wife['s] circumstances" after she suffered a stroke in 2015, and "spent the last 90 days of 2019 and 2020 at MCV and Vibra Hospital . . . for another major stroke." (SAC 3.) Because his wife "solely depends on [him] for all her care," Dunn asks that this Court take his caretaker responsibilities into account and invoke equitable tolling. (*Id.*)

Even construed liberally, however, Dunn's proffered explanation does not show that: (1) he was "pursuing his rights diligently" in the six months that he had to file his claim; or, (2) that "some extraordinary circumstance stood in his way and prevented timely filing." *Edmonson*, 922 F.3d at 548. Dunn does not identify any event which occurred during the relevant timeframe from February 12, 2018 to August 12, 2018 that prevented him from filing his claim in court. Nor does he make any factual allegations that his wife's ongoing condition prevented him from filing during those six months. Rather, Dunn alleges he needed to care for her in 2015 and late 2019 and early 2020, outside of the relevant period. Because Dunn fails to identify any specific "extraordinary circumstance[s]" that would have precluded diligent pursuit of his claim during the relevant time period, his wife's health condition, while tragic, does not

12

indicate that there would be a "gross injustice" should the Court again enforce the statute of limitations. *Harris*, 209 F.3d at 330.

Finally, Dunn's wife's condition did not prevent him from taking other administrative and legal actions between 2015 and late 2019 to early 2020. Dunn was able to initiate his case with both DVA and this Court during that timeframe. Because he was able to initiate these actions, Dunn fails to demonstrate that his wife's ongoing condition was a circumstance that explicitly prevented him from diligently pursuing his claim. While this Court is sympathetic to the strain that serving as his wife's sole caretaker must have taken, Dunn does not demonstrate that the role itself served as an "extraordinary circumstance [that] stood in his way [of diligent pursuit] and prevented timely filing." *Edmonson*, 922 F.3d at 548.

Dunn failed to timely file his claim with this Court, and does not identify any "extraordinary circumstance" which prevented him from doing so within the relevant timeframe. *Id.* Therefore, even reading his claim liberally and taking his factual allegations as true, Dunn does not meet the high bar necessary to invoke equitable tolling in the Fourth Circuit. The Court will therefore grant the Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6).

### B.    The Court Will Also Dismiss The Second Amended Complaint Because Dunn Did Not Comply with the Virginia Medical Malpractice Act

Because Dunn failed to adhere to the VMMA's expert certification requirements, this Court does not have jurisdiction over this case. The Court must, in the alternative, dismiss Dunn's Second Amended Complaint pursuant to Rule 12(b)(1).

### 1.    Standard of Review: Rule 12(b)(1)

Federal district courts are courts of limited subject matter jurisdiction. *United States ex rel. Vuyvuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (citing *Exxon Mobile Corp. v. Allapattah Servs. Inc.*, 545 U.S. 546, 552 (2005)). This Court must, as a result, determine

13

whether it has jurisdiction over the claims at issue. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'") (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation . . ." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) (citing Fed. R. Civ. P. 12(b)(1)).

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenging the Court's subject matter jurisdiction, the burden rests with the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *See Int'l Longshoremen's Ass'n, S.S. Clerks Local 1624, AFL-CIO v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 US. 178, 189 (1936)); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) can attack subject matter jurisdiction in two ways. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). First, a Rule 12(b)(1) motion may attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject matter jurisdiction can lie. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a challenge, a court assumes the truth of the facts alleged by the plaintiff. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

Alternatively, a Rule 12(b)(1) motion may also challenge the existence of subject matter jurisdiction in fact, apart from the pleadings. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a case, because a party challenges the

14

court's "very power to hear the case," the trial court is free to weigh evidence to determine the existence of jurisdiction. *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

Here, the Motion to Dismiss seeks to dismiss Dunn's Second Amended Complaint on the basis that Dunn's failure to "comply with the requirements of Va. Code § 8-01.20.1" is a failure to comply with an affirmative action such as the VMMA. *See Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F2d at 768; *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a case, because a party challenges the court's "very power to hear the case," the trial court is free to weigh evidence to determine the existence of jurisdiction. *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (quoting *Mortensen*, 549 F.2d at 891). No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See id.*; *see also Adams*, 697 F.2d at 1219.

**2.     Legal Standard: Medical Malpractice in Virginia**

With respect to medical malpractice tort claims against the government, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Federal Deposit Ins. Co. v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA is one such waiver, allowing suit "only with respect to a certain category of claims," *Kerns*, 585 F.3d 187, 194 (4th Cir. 2009) (internal quotations omitted), including "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within

the scope of his office or employment," 28 U.S.C. § 1346(b). "The scope of this waiver is limited by . . . specific exceptions." *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005).

Relevant here, jurisdiction exists only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Therefore, "the substantive law of the state where the tort occurred determines the liability of the United States." *Raplee*, 842 F.3d at 331; *see also Meyer*, 510 U.S. at 478 ("§ 1346(b)'s reference to the 'law of the place' means law of the State."). Because Dunn's surgery was performed in Virginia, Virginia law provides "the source of substantive liability under the FTCA." *Meyer*, 510 U.S. at 478; *see also Parker v. United States*, 475 F. Supp. 2d 594, 596 (E.D. Va. 2007) (applying the VMMA to a Virginia medical malpractice claim brought under the FTCA).

The VMMA requires that by the time a plaintiff requests service of process on the defendant, the plaintiff have obtained written certification from a medical expert stating that the defendant "deviated from the applicable standard of care and the deviation was a proximate cause of the injuries claimed." Va. Code § 8.01-20.1. The plaintiff does not need to file the certification with the court, but the defendant may request that the written confirmation the plaintiff obtained be provided "within 10 business days after receipt of such request." *Id.* If the plaintiff did not possess the certification prior to service of process on the defendant, or does not provide the certification within the ten day timeframe, the court "may dismiss the case." [15] *Id.*

---

[15] The VMMA reads, in relevant part:

Upon written request of any defendant, the plaintiff shall, within 10 business days after receipt of such request, provide the defendant with a certification form that affirms that the plaintiff had obtained the necessary certifying expert opinion at the time service was requested . . . The court, upon good cause shown, may conduct an in camera review of the certifying expert opinion obtained by the plaintiff as the

The only exception to the need for expert certification occurs when the trier of fact does not need an expert to illuminate the medical complexities of the claim—those "certain rare instances" where "the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience." *Beverly Enterprises-Virginia v. Nichols*, 441 S.E.2d 1, 3 (Va. 1994); *see also Reed v. United States*, No. 1:14cv247, 2015 WL 1402127, at *4 (E.D. Va. Mar. 25, 2015) ("A narrow exception to the [expert certification] requirement exists only if the medical malpractice alleged lies within [the common knowledge exception]."); *Parker*, 475 F. Supp. 2d at 596–97 (describing expert certification as a "threshold matter" excused only by the common knowledge exception). For example, the Virginia Supreme Court has determined that a jury did not need expert testimony to understand that a physician acted negligently when he forgot to perform one of two intended procedures during a surgical session. *See Webb v. Smith*, 661 S.E.2d 457, 459 (Va. 2008).

The VMMA mandates expert certification be obtained when a factfinder would not understand the claim's medical complexities or when the allegation "challenges the medical staff's professional medical judgment." *Parker*, 475 F. Supp. 2d at 597. Thus, a court in this district has determined that a plaintiff must have expert certification when alleging that medical staff "failed to diagnose and treat his neurological impairment." *Id.* Expert certification also was required (under a similar West Virginia statute) when a surgeon performing hip surgery left a broken needle tip inside the patient's muscle tissue rather than risk causing more severe damage attempting to locate and remove it. *Callahan v. Cho*, 437 F. Supp. 2d 557, 560 (E.D.

_____

court may deem appropriate. If the plaintiff did not obtain a necessary certifying expert opinion at the time the plaintiff requested service of process on a defendant as required under this section, the court . . . may dismiss the case with prejudice.

Va. Code § 8.01-20.1.

Va. 2006). Despite the patient's chronic post-operative pain and the uncontested fact that a complication occurred during the surgery, the *Callahan* Court concluded that expert testimony was needed because "the standard of care [would not] fall within the common knowledge or understanding of judges or lay jurors" and the decision not to remove the needle fragment amounted to "quintessential professional medical judgment." *Id.* at 563. Thus, federal courts lack Rule 12(b)(1) jurisdiction over a medical malpractice claim that occurred in Virginia, brought under the FTCA, when the plaintiff did not comply with the VMMA's expert certification requirement.

### 3.   This Court Lacks Jurisdiction Because Dunn Did Not Comply with the Virginia Medical Malpractice Act

The Court must grant the Second Motion to Dismiss for failure to comply with the VMMA because Dunn has not: (1) shown that he has obtained a valid expert certificate of merit prior to serving DVA or the United States; or, (2) made an allegation to which the "common knowledge exception" applies.

First, Dunn has not established that he has obtained a written expert certification that met the VMMA's requirements. Per the VMMA, Dunn was required to possess a statutorily-defined expert certification at the time he requested service of process on DVA. Va. Code § 8.01-20.1. In his Second Amended Complaint, Dunn references the same medical report by Dr. Craig N. Bash which he relied on in his response to the Motion to Dismiss the First Amended Complaint.[16] However, even construed liberally, Dunn's Second Complaint does not

---

[16] As noted in its December 16, 2019 Memorandum Opinion, this Court did not consider the contents of Dr. Bash's report in its previous ruling because Dunn did not have the report at the time he served process on DVA, nor did he provide the report to DVA within ten business days of DVA's request for the certification. (Dec. 16, 2019 Mem. Op. 14.) Dunn did not attach Dr. Bash's report to the Second Amended Complaint. Some courts in the Eastern District of Virginia have found that plaintiffs can satisfy the VMMA's expert certification requirement by

demonstrate that Dr. Bash's report meets VMMA standards. Among other requirements, the VMMA mandates that an expert certification opine that: (1) the defendant "deviated from the applicable standard of care;" and, (2) the "deviation was a proximate cause of the injuries claimed." Va. Code § 8.01-20.1.

The most favorable reading of Dr. Bash's report does not contain either of those statutorily required opinions. (*See generally* Dr. Bash Report.) Dr. Bash's Report states that Dunn suffers from "urinary retention/leakage . . . persistent pain, ED and recurrent infection, which were not expected or foreseeable outcomes of the biopsy." (*Id.* 1.) It continues that these symptoms "were not directly caused or were not done on purpose as these side effects rate of occurrence is much less that [sic] 100 or even 50%. The expected outcome was to have a side-effect-less biopsy." (*Id.*) Dr. Bash concludes that these symptoms "are 1151 type VA disabilities because they were not reasonably foreseeable the following reasons [sic]." (*Id.* 1–2.) Among those reasons, Dr. Bash avers that Dunn's records "do not support another alternative explanation" apart from the surgery, and his "illness is permanent in nature and thus is not expected to improve with time." (*Id.* 2.)

Even reading Dr. Bash's Report liberally, it does not meet the requirements of the VMMA. While it states that Dunn's symptoms were not "expected or foreseeable outcomes of the biopsy," it nowhere states or expresses the opinion that the DVA "deviated from the

---

obtaining the certification prior to filing an amended complaint. *See Baxter v. United States*, No. 1:15cv633, 2016 WL 3618363, at *5 (E.D. Va. July 6, 2016); *Sowers v. United States*, 141 F. Supp. 3d 471,478 (E.D. Va. 2015).

Because Dunn has provided the United States with Dr. Bash's report prior to filing the Second Amended Complaint, and considering his *pro se* status, the Court will assume without deciding that Dunn timely provided Dr. Bash's report to the United States under the VMMA and will consider its contents here. Nonetheless, for the reasons stated, Dr. Bash's report fails to satisfy the requirements of the VMMA.

applicable standard of care;" or that any such "deviation was a proximate cause of the injuries claimed." Va. Code § 8.01-20.1.

Because Dunn's Second Amended Complaint does not demonstrate that he timely obtained any alternative expert certification, and because Dr. Bash's report does not qualify as such, Dunn has not complied with VMMA's expert certification requirements.

Second, as established by this Court in its December 16, 2019 Memorandum Opinion, Dunn's case does not qualify for the common knowledge exception. Like the performance of hip surgery, the standard of care required for prostate surgery falls outside a trier of fact's common knowledge and experience. *See Callahan*, 437 F. Supp. 2d at 563. During prostate surgery, the performing physician relies on "professional medical judgment" that the average person does not possess. *Id.* In Dunn's case, expert testimony would be required to establish "the applicable standard of care, whether breach of that standard occurred, and whether that breach proximately caused" Dunn's injuries, in the context of a prostate biopsy. *Bell v. United States*, No. 4:11cv60, 2011 WL 3734458, at *3 (E.D. Va. Aug. 24, 2011). Even if the Court were to accept Dunn's contention that "during [his] biopsy [his] prostate was damaged," (SAC 2), Dunn would need to present evidence, in the form of expert testimony, to establish that this damage was caused by his physician's deviation from the standard of care. Without expert testimony, the trier of fact cannot reliably determine whether this type of damage resulted from negligent and injurious conduct on the physician's behalf, rather than from a routine and benign procedure.

To comply with the VMMA, Dunn needed to both possess VMMA-compliant expert certification before he filed his Second Amended Complaint, and to certify that he had obtained this "written opinion . . . by an expert witness." *See* Va. Code § 8.01-20.1. Even if this Court read the contents of Dr. Bash's report liberally, they do not comply with VMMA requirements.

*See id.*  Therefore, this Court lacks jurisdiction over the Second Amended Complaint under Rule 12(b)(1), and it must be dismissed for failure to comply with the VMMA.

### IV.  Conclusion

For the foregoing reasons, the Court will grant the DVA and United States' Motion to Dismiss Dunn's Second Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6).  (ECF No. 19.)  Because Dunn has already twice had the chance to amend his Complaint, the Court will grant the Second Motion to Dismiss with prejudice.

An appropriate Order shall issue.

_____
M. Hannah Lauck
United States District Judge

Date: 8/13/20
Richmond, Virginia